UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLENE PERCY,

                              Plaintiff,

        -against-                                          No. 16-cv-5304 (NSR)

                                                          OPINION & ORDER

THE STATE OF NEW YORK (HUDSON VALLEY
DDSO), LOCAL 412 OF THE CSEA, INC., LOCAL
1000, AFSCME AFL-CIO, and BASIL TOWNSEND,

                              Defendants.

NELSON S. ROMÁN, United States District Judge

        Plaintiff Violene Percy ("Percy") brings this action against Defendants State of New York

– Hudson Valley DDSO ("HVDDSO"), Local 412 of the CSEA, Inc. ("CSEA"),[1] and Basil

Townsend ("Townsend") (collectively, "Defendants"), alleging violations of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, and New York State

Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.*  Before this court are

Defendants' motions to dismiss.  For the foregoing reasons, CSEA's and Townsend's motions are

GRANTED in part and DENIED in part, and HVDDSO's motion is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9 7 2017

---

[1] Fashioned on the docket as "Local 412 of the CSEA, Inc., Local 1000, AFSCME AFL-CIO".

Copies mailed/faxed 9 7 2017
Chambers of Nelson S. Román, U.S.D.J.

## BACKGROUND

The following facts are derived from Plaintiff's Complaint, (ECF No. 1), unless otherwise noted.

On August 7, 2003, Plaintiff was hired by HVDDSO as an Assistant Development Aid. (Compl. ¶ 8.) Plaintiff was later promoted to the position of House Manager. (*Id*.) While employed by the Hudson Valley Developmental Disabilities State Office ("HVDDSO"), at an unspecified time, Plaintiff was hired by CSEA as a "delegate," and in that capacity, she attended conventions and meetings on behalf of CSEA. (*Id*. ¶ 9.) CSEA paid for Plaintiff to engage in these activities, including by reimbursing her for travel and expenses. (*Id*.) Plaintiff worked for both HVDDSO and CSEA until she suffered "a constructive termination" on September 11, 2014 as a result of "[Defendants'] retaliatory acts." (*Id*. ¶ 10.)

In January 2014, Plaintiff began to experience a "series of acts of sexual harassment" perpetrated by Defendant Townsend, who served as her Supervisor at both HVDDSO and CSEA. (*Id*. ¶ 12.) Specifically, Townsend began to "hit on" Plaintiff, suggesting to Plaintiff that she and Townsend should "sleep together." (*Id*. ¶ 12.) During this same time, in or around January 2014, while Plaintiff was working an incident (the "Incident") occurred involving a client served by HVDDSO. (*Id*. ¶ 13.) As part of HVDDSO's investigation of the Incident, a series of meetings took place. (*Id*.) Plaintiff states that Townsend continued to sexually harass Plaintiff "through and in relation to this investigation, … [by] refus[ing] to represent the Plaintiff [on behalf of CSEA] at several meetings related to the incident despite having represented other individuals involved in the same incident." (*Id*.) Plaintiff contends that because Townsend did not represent her himself, she was treated differently than the other individuals involved in the Incident in retaliation for declining his sexual advances. (*Id*. at ¶ 14.)

In April 2014, Plaintiff was in the coffee room at the CSEA office when Townsend entered. (*Id*. at ¶ 15.) When a secretary left the room, leaving Plaintiff and Townsend alone, he began making inappropriate comments and gestures to Plaintiff, including that they could "satisfy each other … making kisses gestures toward … Plaintiff … putting his tongue out and quickly moving it up and down, and side to side. (*Id*.) This behavior continued although Plaintiff told Townsend to stop. (*Id*.)

On May 5, 2014, Plaintiff asserts that a secretary of CSEA told Plaintiff to call Townsend. (*Id*. at ¶ 16.) Plaintiff called Townsend, and he told her he "wanted to do her, that he [could] satisfy her, that he [had] the tool to make her scream, and he wanted to know how big her private … was." (*Id*.) Plaintiff alleges that she told Townsend to stop on this occasion as well. (*Id*.) Later that month, on May 27, 2014, Plaintiff, Townsend and other CSEA members were on an Amtrak train returning from a convention in Atlanta. (*Id*. at ¶ 17.) Townsend told a person that was next to Plaintiff to switch seats with him so he could sit next to Plaintiff. (*Id*.) Townsend sat next to her and began asking her "why she was in love with a white man, telling her that she should be with a black man only, and that because she is from an island she should be with an island guy like himself," and that he "knew how to take care of her (sexually)." (*Id*.) Plaintiff told Townsend to stop, that nothing would transpire between them, and changed seats. (*Id*.)

After the May 27, 2014 incident on the train, Townsend continued to make sexual comments toward Plaintiff, "inappropriately placed his hands on her back, made comments regarding her job, and eventually pressured … *Plaintiff to resign as a delegate of CSEA* because she would not accept his sexual advances." (*Id*. at ¶ 18) (emphasis added).

Plaintiff asserts that at all times relevant to the Complaint, Defendants were aware of the of the sexual harassment that Plaintiff suffered at the hands of Townsend, but took no action to

ensure the harassment would stop. (*Id.* at ¶ 19.)[2] Presumably as to her employment at HVDDSO, Plaintiff asserts that on June 26, 2014, she was placed on an administrative leave (*id.* at ¶ 21), and suspended on July 10, 2014 (*id.* at ¶ 22).

On or about September 2014, Plaintiff alleges she was "*forced by CSEA and Townsend* to either resign and … [retain] her retirement option, or stay … and dispute … [the] charges" that had apparently arisen against her in relation to the Incident. (*Id.* at ¶ 23) (emphasis added). Plaintiff asserts that Defendants Townsend and CSEA threatened Plaintiff with arrest and criminal charges relating to the Incident if she chose to dispute them rather than resigning (*id.*), although other employees involved in the same Incident were represented by CSEA and Townsend without being pressured to resign, or threatened with arrest or criminal charges. (*Id.*) Plaintiff also alleges that Townsend and Pamela Alexander, another CSEA employee that routinely represented employees during employment disputes on behalf of CSEA, told Plaintiff they would not file a petition on her behalf or represent her in connection with the Incident. (*Id.*) Subsequently, on September 11, 2014, Plaintiff alleges she suffered a "constructive termination" because she was forced to resign from HVDDSO in retaliation for reporting the sexual harassment, refusing Townsend's advances, and because CSEA failed to provide equal representation to her in connection with the aforementioned Incident. (*Id.* at ¶ 24.)

Plaintiff concludes her allegations by cursorily asserting that HVDDSO "constructive[ly] terminat[ed]" her "based upon discriminatory factors including sexual harassment." (*Id.* at ¶ 25.)[3]

---

[2] Plaintiff does not allege how either Defendant-entity became aware of the alleged harassment, and asserts only that the "Defendants" were aware.

[3] This is the only reference to HVDDSO's involvement in Plaintiff's termination. Additionally, although Plaintiff asserts Townsend held a supervisory role in relation to her as an employee at HVDDSO, the Court notes that all the specific incidents of sexual harassment alleged by Plaintiff appear to occur at CSEA events, and in connection with Townsend's role as a member of CSEA. Plaintiff does not allege any additional facts regarding the role that Townsend held at HVDDSO either generally, or in relation to her, or for that matter, his title. Nor does Plaintiff proffer any

Finally, according to the Complaint, throughout Plaintiff's employment with both HVDDSO and CSEA, she received "excellent evaluations," (*id*. at ¶ 11), and at all relevant times she performed her duties in a satisfactory manner (*id*. at ¶ 20).

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content

---

allegations as to Townsend's involvement in her constructive termination in his role as employee of HVDDSO except to the extent that he was superior to her, and the individual engaging in sexual harassment. Rather, all of her specific allegations as to his involvement in her resignation or termination appear to occur in his role as CSEA employee. Furthermore, in her cause of action under Title VII, Plaintiff alleges that she was retaliated against specifically by CSEA and Townsend (Compl. ¶ 43), to the extent that they refused to represent her as representatives of her labor union, and allegedly threatened to ensure she had criminal charges pressed against had she chosen not to resign presumably from both roles at CSEA and HVDDSO (*see id*. at ¶ 23).

pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

As to a motion brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."

## DISCUSSION

Plaintiff alleges that she was discriminated against when Defendant Townsend sexually harassed her, and retaliated against for reporting said harassment in violation of Title VII and NYSHRL. (*See, e.g.*, Compl. ¶ 43) (stating, in cause of action under Title VII that she "seeks all remedies … for discrimination based on sexual harassment by Defendant Townsend, and the retaliation of Defendant CSEA and Defendant Townsend for reporting the sexual harassment of Defendant Townsend"); (*id*. at ¶ 48) (alleging, under NYSHRL cause of action, that "Defendants" discriminated against Plaintiff for reporting sexual harassment by Townsend.)

## I.  Defendant CSEA[4]

### a.  Statute of Limitations

Defendant CSEA asserts that the bulk of Plaintiff's allegations are time-barred, and that the only events that are timely relate to Plaintiff's September 2014 resignation from her position with HVDDSO.  (*See* CSEA Mem. in Supp. of Mot. to Dismiss ("CSEA Mem."), at 8, ECF No. 60.)[5]  Plaintiff contends that any claims falling outside of the 300-day period prior to the filing of her EEOC charge are appropriately asserted as part of a continuing violation in the form of a hostile work environment culminating in her constructive termination in September 2014.  (*See* Pl. Opp'n. CSEA Mot. Dismiss ("Pl. Opp'n. to CSEA"), at 6-7, ECF No. 52.)  CSEA does not argue that Plaintiff's claims of retaliation, based upon a failure to equally represent her and forced resignation

---

[4] CSEA argues it should be dismissed because Plaintiff is unable to establish that she was employed by CSEA.  (*See* CSEA Mem. at 11) ("[P]laintiff cannot establish an employment relationship between either herself and defendant CSEA or defendant Townsend and defendant CSEA; there simply is none.")  To support this contention, CSEA cites to the Collective Bargaining Agreement between CSEA and New York State, along with a series of other documents meant to presumably demonstrate that the State employed Plaintiff and Townsend, rather than CSEA.  (*See generally* Decl. of Leslie Perrin in Support of Motion to Dismiss ("Perrin Decl."), Exs. E-G, I, ECF No. 61.)  However, CSEA offers no reason why it believes the Court may take judicial notice of these documents, nor are they incorporated by reference into the Complaint.  *See, e.g., Bright-Asante v. Saks & Co., Inc.*, 15-CV-5876 (ER), 2017 WL 1064890, at *1 (S.D.N.Y. Mar. 16, 2017) (taking judicial notice of the Collective Bargaining Agreement ("CBA") between Union and Employer Entity "because they [were] incorporated by reference in the Amended Complaint").  The Court reminds the parties that, at this stage of litigation the undersigned must generally treat all of the allegations in the Complaint as true, draw all reasonable inferences in Plaintiff's favor, and limit its review to the complaint, materials integral to the complaint, and documents of which the Court may take judicial notice.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (noting on motion to dismiss that court may consider materials extrinsic to complaint where they are integral to complaint or an appropriate subject for judicial notice).

[5] CSEA argues that the Court "must" reject Plaintiff's Title VII claims because they are more appropriately fashioned as a state law claim by Plaintiff for breach of CSEA's duty to represent her as a union member under New York Civil Service Law § 209-a.2(c), which contains a shorter statute of limitations – without a single citation to any controlling federal case law.  (*See* Def. Mem. at 7-8.)  This argument is unavailing.  Plaintiff asserts a Title VII claim and, at this stage, the Court determines whether she has alleged facts sufficient to support such a claim.  *See Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998) ("Although the … Supreme Court has held that the statute of limitations for breach of duty of fair representation claims is six months, … examination of [plaintiff's] Complaint reveals that she has alleged claims under Title VII, … as opposed to a breach of the duty of fair representation … [A] union may … face liability under Title VII … if it breaches its duty of fair representation. As to such claims, the statute of limitations under Title VII …—not the six-month statute of limitations for breach of duty of fair representation— controls.").

or "constructive discharge" are untimely, though it does challenge these claims on other grounds, as discussed in the following section.  (*See* CSEA Mem. at 9-12.)

Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency.  *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 358 (S.D.N.Y. 2016) (citing 42 U.S.C. § 2000e–5(e)(1) and *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 418 (S.D.N.Y. 2002)).  Thus, only events that occurred during the 300–day period prior to June 5, 2015, when Plaintiff filed her Complaint with the EEOC, are actionable under Title VII, unless the period has been equitably tolled or extended.  *Nowak v. EGW Home Care, Inc.*, 82 F. Supp. 2d 101, 106–07 (W.D.N.Y. 2000) (citing *Van Zant v. KLM Royal Dutch Airlines, Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712-13 (2d Cir. 1996)).  Here, Plaintiff contends that the 300-day period has been extended under the "continuing violation" doctrine.

Where the "continuing violation" exception applies, Title VII's 300–day limitations period can in fact extend.  *Id.* (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994); *Cook v. Pan Am. World Airways*, 771 F.2d 635, 646 (2d Cir. 1985), *cert. denied*, 474 U.S. 1109 (1986)).  Under the continuing violation doctrine, where "a plaintiff has experienced a continuous practice and policy of discrimination, … the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (alteration in original) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001)); *Nowak*, 82 F. Supp. 2d at 106 (W.D.N.Y. 2000) ("Under this exception, … a timely EEOC charge concerning a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the

limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been time-barred."). Notably, "[t]he courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 366 (S.D.N.Y. 2002). Given this reserved approach, as the legal authorities in Plaintiff's own memorandum reveal, the continuing violation exception is generally reserved for cases where there was an ongoing discriminatory policy or practice. *Id*. at 907.

Hostile work environment claims fall within the continuing violation framework. These claims "may ... be based on events outside the statute of limitations period as long as (1) the acts occurring before the ... cutoff constitute part of the same actionable hostile work environment practice, and (2) at least one act contributing to the claim occurs within the filing period." *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016) (internal quotation marks and citations omitted); *see Langford v. Int'l Union of Operating Engineers, Local 30*, 765 F. Supp. 2d 486, 496 (S.D.N.Y. 2011) ("The Second Circuit has equated [hostile work environment] claims with the "continuing violation" doctrine."); *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d at 367 ("A hostile work environment claim must meet the same requirements under the continuing violation doctrine"). Here, Plaintiff asserts that she filed her EEOC Charge within 300 days of the last discriminatory act – the "constructive termination" of her employment. (*See* Pl. Opp'n. to CSEA, at 6-7.) She contends that this forced resignation or termination was the last act in a continuous practice and policy of sexual discrimination against her that perpetuated a hostile work environment, and as such, the continuing violation doctrine should encompass the alleged sexually charged interactions initiated by Townsend that occurred outside of the 300-day statute of limitations. (*Id*.)

It is well established that termination, whether through discharge or resignation, is a single act, discrete in nature. *See Lightfoot*, 110 F.3d at 907 ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."); *Underwood v. Roswell Park Cancer Inst.*, 15-CV-684-FPG, 2017 WL 131740, at *10-11 (W.D.N.Y. Jan. 13, 2017), *reconsideration denied*, 2017 WL 1593445 (W.D.N.Y. May 2, 2017) ("to the extent the continuing violation doctrine is viable at all after *Morgan*, it cannot apply to discrete acts of discrimination … '[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'") (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Such discrete incidences cannot extend the statute of limitations and revive otherwise untimely acts. *Brown v. N.Y.C. Dep't of Educ.*, 513 F. App'x 89, 91 (2d Cir. 2013) ("The letter notifying Brown of her termination cannot save her hostile work environment claim, because her termination was a separate and discrete act."); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("[T]he mere fact that an employee was dismissed within the statutory period cannot be used to pull in[to the statutory period] a time-barred discriminatory act ...") (alteration and internal quotation marks omitted); *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 587 (S.D.N.Y. 2014) ("Although [plaintiff] alleges that the [untimely] hostile work environment created by defendants led to her constructive discharge, that allegation is insufficient to resuscitate her time-barred claims"); *see also Skates v. Inc. Vill. of Freeport*, 15-CV-1136 (SJF) (AYS), 2016 WL 1459659, at *10 (E.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016) (plaintiff's "termination constitutes an unquestionably discrete

act 'with its own filing deadline … As such, *that act cannot be part of a preceding and continuing violation*.'") (internal citation omitted) (emphasis added); *Fiero*, 994 F. Supp. 2d at 587 (*citing Tucker v. MTA, et al.*, 11-CV-5781 (JPO), 2013 WL 55831, at \*3 n.5 (S.D.N.Y. Jan. 4, 2013) (continuing violation doctrine applies "when there is a continuous chain of discriminatory *acts*, *not* when the *injury* from the discriminatory acts continues past the [end of the limitations period]") (internal quotation marks omitted); *Sareen v. Port Auth. of N.Y. & N.J.*, 2013 WL 6588435, at \*7 (S.D.N.Y. 2013) ("law in this Circuit is clear that ... discrete acts of discrimination … do not implicate the continuing violation doctrine."); *Butler v. Coca–Cola Refreshments USA, Inc.*, 12–CV–1791, 2013 WL 3324995, at \*3 (E.D.N.Y. July 1, 2013) ("[E]ven if plaintiff had not withdrawn the discriminatory termination claim, that claim could not serve as the foundation for plaintiff's continuing violation theory of a hostile work environment. An employee's termination is the paradigmatic "discrete act" that cannot be part of a hostile work environment claim.").  As such, because Plaintiff's resignation or forced retaliatory termination is a discrete act, it cannot be considered a continuation of the alleged sexual discrimination Plaintiff contends she experienced previously.

Similarly, Plaintiff's allegation that CSEA failed to provide her with equal representation and file a petition on her behalf with regard to the Incident, *in retaliation* for her refusal to accept Townsend's sexual advances, are also a discrete acts.  *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 192–93 (D. Conn. 2000) ("That [plaintiff] has alleged several specific acts of retaliation within the limitations period is unavailing with respect to her claims of sexual harassment. A plaintiff cannot resurrect claims of discrimination that are outside the limitations period *through subsequent acts of retaliation* within the limitations period"); *see also Bolick v. Alea Grp. Holdings, Ltd.*, 278 F. Supp. 2d 278, 283 (D. Conn. 2003) (affirming dismissal of harassment claim

as untimely and vacating dismissal of retaliation claim; "[i]t sometimes happens—more frequently than might be imagined—that an employee whose primary claim of discrimination cannot survive pre-trial dispositive motions is able to take to trial the secondary claim that he or she was fired or adversely affected in retaliation for asserting the primary claim") (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 759 (2d Cir. 1998)).

For these reasons, Plaintiff's discrimination claims stemming from conduct that occurred prior to the 300-day period, must be dismissed as alleged on the basis that they are time-barred.[6]

### b. Title VII Claim Against CSEA

Defendant contends that Plaintiff has failed to state a cognizable claim under Title VII because she has not alleged facts sufficient to demonstrate that CSEA acted with any unlawful discriminatory or retaliatory motive. (*See* CSEA Mem. at 9.) Plaintiff contends that she was unlawfully forced to resign in retaliation for declining sexual advances made by her supervisor, Defendant Townsend, and that CSEA was aware of this conduct, but neglected to address it. (*See* Compl. ¶ 19; Pl. Opp'n. to CSEA at 13.)

Title VII prohibits retaliation against employees for complaining of prohibited employment discrimination, "stating that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." *Cifra v. GE,* 252 F.3d 205, 216 (2d Cir.

---

[6] "[A]lleged incidents that may not be considered for purposes of establishing liability for a hostile work environment, because they occurred outside the limitations period … nevertheless may be admissible and probative as background evidence to support a claim based on alleged conduct that falls within the limitations period." *McGullam v. Cedar Graphics*, 609 F.3d 70, 86 (2d Cir. 2010) (Calabresi, J., concurring) (internal citations omitted). As such, discovery is often "had into these time-barred events only to the extent that they shed light on events" that are untimely. *Germany v. N.Y.S. D.O.C.S.*, 03-CV-148 (GEL), 2003 WL 22203724, at *6 n.9 (S.D.N.Y. Sept. 22, 2003).

2001) (citing 42 U.S.C. § 2000e–3(a)). To assert a *prima facie* case of retaliation, the plaintiff must plausibly allege: "(1) that she engaged in protected participation or opposition under Title VII;" (2) "that the employer was aware of this activity;" (3) "that the employer took adverse action against the plaintiff;" and (4) "that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Id; see also Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 230 (S.D.N.Y. 1998) ("To make out a *prima facie* case of retaliation [against defendant labor unions,] plaintiff must show that (1) she was engaged in an activity protected under Title VII … (2) the Unions were aware of [plaintiff]'s participation in the protected activity, (3) [plaintiff] suffered adverse union decisions, and (4) there was a causal connection between the her protected activity and the adverse action taken by the Unions") (citing *Malarkey v. Texaco, Inc*., 983 F.2d 1204, 1213 (2d Cir. 1993)).

Assuming Plaintiff can establish a prima facie case of discrimination, "a presumption of retaliation appears, and the employer must articulate some legitimate, nondiscriminatory reason for the employer's rejection.[7] *Wagner v. Burnham*, 03-CV-1522, 2006 WL 266551, at *15 (N.D.N.Y. Feb. 1, 2006). "If the employer can offer proof of a nondiscriminatory reason, the burden shifts to the plaintiff to "prove that the proffered reason was merely a pretext for retaliation that the employer's action was prompted by an impermissible motive." *Id*.

The Second Circuit Court has "clarified that, at the motion to dismiss stage, a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*. Rather, a plaintiff "'need only give plausible support to a minimal inference of discriminatory motivation.'" *Boza–Meade v. Rochester Hous. Auth*., 170 F. Supp. 3d 535, 552 (W.D.N.Y. 2016) (citing *Vega v. Hempstead*

---

[7] CSEA's arguments do not extend to this step of the analysis, as it contends that it is not Plaintiff's nor Townsend's employer, and that Plaintiff otherwise fails to state a plausible claim under Title VII. (*See, e.g.*, CSEA Mem. at 9-12.)

*Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  Nonetheless, drawing all inferences in Plaintiff's favor as the Court must at this stage, Plaintiff plausibly alleges a *prima facie* case of retaliation.  As to the first prong, Plaintiff asserts that she engaged in protected activity by declining Townsend's sexual advances.  (*See* Pl. Opp'n. to CSEA at 13.)  Courts are split on the question of whether rejecting unwanted sexual advances constitutes protected activity.  *See Little*, 210 F. Supp. 2d at 385–86 (noting district courts are split on issue of whether resisting an employer's sexual advances constitutes protected activity for purposes of establishing retaliation, collecting cases reflecting split, and finding that such a rejection does constitute protected activity on basis that "[t]he prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination[;] [s]exual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct"); *see also Pedrosa v. City of New York*, 13-CV-01890 (LGS), 2014 WL 99997, at *9 n.1 (S.D.N.Y. Jan. 9, 2014) (collecting cases reflecting split for retaliation claim under NYSHRL).

Given the allegation that Townsend held a supervisory position as President of the CSEA, for the purposes of this motion, the Court finds that, by rejecting his sexual harassment, Plaintiff has plausibly alleged at this stage that she engaged in a protected activity.  *Laurin v. Pokoik*, 02-CV-1938, 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005) (holding that the rejection of sexual advances is protected activity because plaintiff had few other avenues of complaining because perpetrator held superior position); *see also Elmessaoudi v. Mark 2 Restaurant LLC*, 2016 WL 4992582 *10 (S.D.N.Y. 2016) ("[T]his Court concludes that rejecting a supervisor's sexual advances is protected activity sufficient to satisfy the first element of a prima facie retaliation case.") (internal quotation marks and citations omitted).

As to the second prong, although thinly alleged, Plaintiff also asserts that she made CSEA aware of the harassment, and they failed to prevent or address it. (*See* Pl. Opp'n. to CSEA at 13-14.) The Court considers this factor in light of the assertion that Townsend was the President of CSEA, which could have reasonably affected her ability to report this conduct. As to the third factor, Plaintiff asserts, and CSEA does not dispute, that she experienced an adverse employment action in the form of an alleged forced resignation or constructive termination of both her positions at HVDDSO and CSEA. (*Id*. at 14.) Finally, as to the final prong of the *prima facie* retaliation analysis, whether there is a causal connection between the protected activity and the retaliation, this need not be demonstrated by direct evidence. *Monclova v. City of New York*, 2014 WL 4828813 at *16 (E.D.N.Y. 2014). Instead, "[c]lose temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and a retaliatory action." *Id*. (internal quotation marks and citations omitted). The last specific incident of sexual harassment alleged occurred on May 27, 2014, approximately one to two months before Plaintiff's suspension in July 2014, which allegedly led to her ultimate termination in September of that year. (*See* Compl. at ¶¶ 17, 22-23.) Generally, "[t]hree months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation." *Yarde v. Good Samaritan Hosp*., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005); *see Monclova*, 2014 WL 4828813 at *17 (E.D.N.Y. 2014) ("three months is a 'generally accepted' time-period for raising an inference of retaliation based on temporal proximity."). Plaintiff also alleges the harassment continued after the May 2014 incident, though she does not provide specific dates or details. (*See* Compl. ¶ 18.) Based upon these allegations, and given that a plaintiff's burden of proof as to a *prima facie* retaliation claim "has been characterized as minimal and de minimis," *Zann Kwan v.*

*Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013), the Court finds that Plaintiff has plausibly alleged a *prima facie* case of retaliation at this juncture.

## II.    Defendant HVDDSO

HVDDSO contends that Plaintiff has failed to exhaust her administrative remedies against it because it was not named as a Respondent in her first EEOC proceeding which appeared to involve only CSEA and Townsend, and her Second EEOC Charge, which did name HVDDSO, was untimely filed.  (*See* HVDDSO Mem. in Support of Mot to Dismiss ("HVDDSO Mem.") at 5, ECF No. 29.)  Plaintiff argues first, that she exhausted her administrative remedies prior to filing suit, and second, that to the extent that she did fail to exhaust her administrative remedies, she is entitled to various exceptions that permit her to proceed in a suit against HVDDSO.  (*See* Pl. Opp'n. HVDDSO Mot. to Dismiss ("Pl. Opp'n. to HVDDSO"), at 10-14, ECF No. 55.)

### a.   Exhaustion of Administrative Remedies

As delineated in the standard above, on a motion to dismiss the complaint, the Court's consideration is limited to "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Wilson v. Kellogg Co.*, 628 Fed. Appx. 59, 60 (2d Cir. 2016) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).  As part of Plaintiff's Complaint, she attaches an EEOC Right to Sue Letter, dated April 26, 2016 which corresponds with EEOC Charge Number 520-2015-02661 ("No. 02661"), and appears to list only CSEA as a party to be notified. (*See* Compl. at 14 ("First Right to Sue Letter").  As part of its motion, HVDDSO attaches the

EEOC Charging Complaint associated with EEOC Charge No. 02661, dated June 5, 2015.[8]  (*See*

Decl. of Steven Morris in Supp. of HVDDSO Mot. to Dismiss ("Morris Decl."), Ex. A ("EEOC

Charge, No. 02661"), ECF No. 30-1.)  Two points are worth noting: Charge No. 02661 does not

name HVDDSO, and Plaintiff does not contest that this is in fact the EEOC Charge related to the

Right to Sue Letter appended to the Complaint.  (*See* Pl. Opp'n. to HVDDSO at 9) ("the Notice of

Right to Sue letter issued by EEOC on April 26, 2016, as concerns the first EEOC Charge Number

520-2015-02661, does not name the Defendant, HVDDSO").

Defendant also submits a Notice of Charge of Discrimination corresponding with a second

EEOC Charge Number 520-2016-00120 ("No. 00120"), dated January 29, 2016.  (*See* Morris

Decl., Ex. B ("Notice of Charge, No. 00120".)  *This* Notice of Charge is addressed to HVDDSO

and directs HVDDSO to the EEOC Mediation Program as an opportunity to resolve the issues

within the charge without "extensive investigation of expenditure of resources."  (*See* Notice of

Charge, No. 00120.)[9]  Additionally, HVDDSO submits the Right to Sue Letter associated with

Charge No. 00120, dated April 11, 2016, which appears to identify HVDDSO as a party to the

Charge, and indicates that the EEOC closed its file on the charge because "it was not timely filed

with the EEOC; in other words [Plaintiff] waited too long after the date(s) of the alleged

---

[8] *See Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 (E.D.N.Y. 2013) ("Although plaintiff's EEOC Charge was submitted by defendant, the '[c]ourt takes judicial notice of [p]laintiff's EEOC charge on a motion to dismiss.'") (citing *Morris v. Broadridge Fin. Servs., Inc.*, 10–CV–1707, 2010 WL 5187669, at *3 n. 2 (E.D.N.Y. Dec. 14, 2010)) (citing *Nickens v. N.Y. State Dep't of Corr. Servs.*, 94–CV–5425, 1996 WL 148479, at *1 (E.D.N.Y. Mar. 27, 1996)). "Because plaintiff's EEOC Charge is 'a public document filed in an administrative proceeding, and is integral to plaintiff's [discrimination] claims, the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are also properly considered on' a motion to dismiss." *Id*. (citing *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y.2010)); *Ahuja v. Detica, Inc.*, 742 F. Supp. 2d 96, 101–02 (D.D.C. 2001) (taking judicial notice of an EEOC Complaint and Notice of Charge on motion to dismiss without converting motion to one for summary judgment).  Plaintiff also submits the Charging Complaint with her Opposition papers.  (*See* Haberman Decl. Opp'n. Mot. to Dismiss ("Haberman Decl."), Ex. 1, ECF No. 54.)

[9] "At the motion to dismiss stage, courts may consider … 'documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit.'"  *Nelson v. MillerCoors, LLC*, 15-CV-7082 (WFK) (RML), 2017 WL 1403343, at *3 (E.D.N.Y. Mar. 31, 2017) (citing *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)).

discrimination to file [her] charge."  (Morris Decl., Ex. C ("Second Right to Sue Letter"), ECF No. 30-3.)

Generally, to bring a Title VII action in federal court, a plaintiff must first exhaust her administrative remedies by filing a timely charge with the EEOC and obtaining leave to file suit. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) ("a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter) (citing 42 U.S.C. § 2000e–5(e), (f); 29 U.S.C. § 626(d); *Shah v. N.Y. State Dep't of Civil Ser*v., 168 F.3d 610, 613 (2d Cir.1999) and *Malarkey v. Texaco, Inc*., 983 F.2d 1204, 1208 (2d Cir.1993)).  The Second Circuit has described the initial EEOC Complaint as an "essential element" of the "Title VII … statutory scheme[] and, as such, a precondition to bringing such claims in federal court."  *Id*. (internal quotation marks and citations omitted).

Plaintiff concedes that the First Right to Sue letter issued by the EEOC does not name HVDDSO, and thus, that she failed, at least initially, to identify HVDDSO as a respondent in the initial charging complaint for EEOC Charge No. 02661.  (*See* Pl. Opp'n. to HVDDSO at 9.) Nonetheless, she argues that she has properly exhausted her administrative remedies against this Defendant because she named HVDDSO in an "EEOC Form 5," submitted in October 2015, in response to a request by the EEOC for more information regarding Charge No. 02661, and that the Right to Sue Letter for Charge No. 02661 only excluded HVDDSO in error.  (*Id*. at 2-3.)  Plaintiff asserts that the "evidence" "strongly suggests" HVDDSO was incorrectly omitted; the evidence being: Plaintiff's contention, asserted only in her Opposition, that she never requested that a separate (second) EEOC Charge be opened and that she submitted a "Form 5"[10] naming Defendant

---

[10] "Form 5" is not offered in support of her Plaintiff's Opposition.

in response to the EEOC's request for additional information on the initial Charge No. 02661; and three exhibits revealing portions of correspondence between Plaintiff's counsel and the EEOC presumably regarding Charge No. 02661. (*See* Pl. Opp'n. to HVDDSO at 9; Haberman Decl. Supp. Opp'n. HVDDSO Mot. to Dismiss ("Haberman Decl."), Exs. 1-3, ECF No. 54.)[11] Plaintiff offers no legal citations in support of this contention. (*See* Pl. Opp'n. to HVDDSO at 9-10; *see Bretillot v. Burrow*, 14-CV-7633 (JGK) (MHD), 2015 WL 6455155, at *2 (S.D.N.Y. Oct. 26, 2015) (citing *Gortat v. Capala Brothers, Inc*., 07-CV-3629 (ILG), 2010 WL 3417847, at *1 (E.D.N.Y. Aug. 27, 2010) (where motion papers were "completely devoid of citation to legal authorities, they should arguably fail on that basis alone") (internal citations omitted).

Other courts have declined to take judicial notice of correspondence between plaintiffs and the EEOC on a motion to dismiss. *Davenport v. Bd. of Trustees of State Ctr. Cmty. Coll. Dist*., 07-CV-00494 (OWW) (SMS), 2008 WL 170876, at *4 (E.D. Cal. Jan. 18, 2008) (declining to take judicial notice of correspondence between plaintiff and EEOC, among other documents because … "[u]nlike the court and agency records … the [proffered] documents … are subject to reasonable dispute as they are not public records and are not 'capable of accurate and ready determination by

---

[11] The third exhibit is a letter dated April 6, 2016, from the EEOC to Plaintiff's counsel, with a subject line referencing Charge No. 02661 with the caption "Violene Percy v. Hudson Valley DDSO/OPWDD." (*See* Haberman Decl. at Ex. 3.) The letter indicates it encloses a copy of the position statement submitted by the respondent in connection with Charge No. 02661. (*Id*. Ex. 3.) HVDDSO argues that this was a typographical error, because HVDDSO was only given an opportunity to submit a position statement in response to the Second EEOC Charge, No. 00120, and ultimately declining, never submitted any position statement to the EEOC. (*See* HVDDSO Mem. at 4 n.5.) Plaintiff declined to submit the enclosure along with the letter, so it is unclear which parties' position statement was actually appended to the April 6, 2016 Letter. Defendant also notes that, despite Plaintiff's contention that she never filed a second charge, in part of the email correspondence between Plaintiff's counsel and the EEOC, offered by Plaintiff, the EEOC indicates that they are in receipt of *two* charges involving Plaintiff. (*See* HVDDSO Reply at 4) (citing Haberman Decl. at Ex 2.) However, for the reasons stated *infra*, the Court need not, and thus declines to consider these documents for the purpose of rendering a decision, and as such, declines to convert this motion into one for summary judgment on this issue.

resort to sources whose accuracy cannot reasonably be questioned.'") (citing Fed. R. Evid. 201(b)).[12]

This Court takes the same approach, as it need not consider these documents to resolve the instant motion, and thus declines to convert it into one for summary judgment on this issue. Although when determining whether to allow a party not named in a timely EEOC complaint to be added to a Title VII action, courts generally prefer the "identity of interest" analysis, described below, to the "relate back" analysis relied upon by Plaintiff, where parties are named in an amendment to a charge filed more than 300 days after the last allegedly discriminatory act, courts have rejected claims against these parties as time-barred. *See Fuchilla v. Prockop*, 682 F. Supp. 247, 256 (D.N.J. 1987) (denying claim based upon "untimely amendment … nam[ing] … new defendant" filed more than 300 days after incident of harassment, on basis that "[f]ailure to name a party is not included among those 'technical defects or omissions' for which a charge may be amended and … a fair reading of this regulation would [not] support such an addition."); *see also Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 211-13 (N.D.N.Y. 2013) ("[D]eclin[ing] to find that Plaintiff's amended EEOC charge relates back to her original charge" after relying on identity of interest analysis on basis that, "when courts have the opportunity to decide whether the defendant, unnamed in the initial EEOC charge, should be included in the subsequent Title VII litigation, the courts have decided the issue based on an identity of interest analysis rather than a 'related back' amendment analysis" and "courts in this Circuit are hesitant to find that an amendment adding new defendants relates back to the original EEOC charge."); *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 351 (E.D. Pa. 2012) (noting EEOC likely "considered

---

[12] It is not clear to the Court whether the April 6, 2016 letter is a public document. *See Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 85 (D.D.C. 2016) (considering EEOC document though unclear whether it was a public document, only where court had converted relevant portion of motion into motion for summary judgment). However, for the reasons stated herein, the Court declines to take notice of this document.

plaintiff's two charges to be related" where "they were given the same charge number."); *Drummer v. DCI Contracting Corp.*, 772 F. Supp. 821, 829 (S.D.N.Y. 1991) (noting, with regard to claims to be asserted against unnamed defendants, courts have "held that the failure to charge [an individual defendant] as a respondent if it was intended to hold him personally liable is not a procedural technicality but a matter of substance") (internal quotation marks and citation omitted)). The last allegedly discriminatory act, Plaintiff's discharge, occurred in September 2014. According to Plaintiff, she submitted her amendment adding HVDDSO to the first EEOC Charge, No. 02661, via a "Form 5" letter submitted in October 2015, more than 300 days after Plaintiff was terminated. (*See* Pl. Opp'n. to HVDDSO, at 2-3.) Even accepting as true Plaintiff's contention, as asserted in her Opposition, that she *amended her first charge* to include HVDDSO as a respondent, she did so after the expiration of the statute of limitations, and thus failed to exhaust her administrative claim in a timely fashion. As such, the Court finds that Plaintiff has not plausibly alleged that she exhausted her administrative claims against HVDDSO.

### b. Identity of Interest Exception[13]

As discussed previously, to bring a Title VII claim against a party in federal court, exhaustion of one's administrative remedies is ordinarily a prerequisite without which a district court lacks subject matter jurisdiction over the claims asserted. *See Johnson v. Palma*, 931 F.2d

---

[13] Courts have described the identity of interest exception as "intended to protect parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements" and "most commonly [applied] in the context of *pro se* administrative complaints." *Cole v. Cent. Park Sys., Inc.*, 09-CV-3185 (RRM) (CLP), 2010 WL 3747591, at *6 (E.D.N.Y. Sept. 20, 2010) (citing *Tarr v. Credit Suisse Asset Mgmt.*, 958 F. Supp. 785, 794 (E.D.N.Y. 1997)) (noting plaintiff's administrative charges were filed with the assistance of legal counsel, and "agreeing with the majority of district courts examining the issue … that [plaintiff's] reliance on the 'identity of interest' exception is inapt, and that dismissal is warranted on that ground alone.") (citing *See Brown v. County of Oneida*, No. 99–CV–1064, 2000 WL 1499343, at *2 (N.D.N.Y. Sept. 28, 2000)) (collecting cases); *see also Popat v. Levy*, 15-CV-01052 (EAW), 2017 WL 2210762, at *5 (W.D.N.Y. May 19, 2017) ("Although the identity of interest exception is not limited to *pro se* parties, the fact that Plaintiff had the benefit of counsel is informative to the Court's consideration of the [identity of interest] … factors").

203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e–5(e)); *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 213 (N.D.N.Y. 2013). However, the Second Circuit takes a "flexible stance" to Title VII cases, and has created several exceptions to this rule. *Ganthier v. N. Shore-Long Island Jewish Health Sys.*, 298 F. Supp. 2d 342, 347 (E.D.N.Y. 2004); *Dortz v. City of New York*, 904 F. Supp. 127, 142 (S.D.N.Y. 1995) (Exceptions permitted "because it is important to maintain 'the availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements ....'") (citing *Goyette v. DCA Advertising, Inc.*, 830 F.Supp. 737, 747 (S.D.N.Y. 1993)).

One such exception allows "a Title VII action to proceed against an unnamed party where there is a 'clear identity of interest between the unnamed defendant and the party named in the administrative charge.'" *Ganthier v. N. Shore-Long Island Jewish Health Sys.*, 298 F. Supp. 2d 342, 347 (E.D.N.Y. 2004) (citing *Johnson*, 931 F.2d at 209). The identity of interest exception is composed of four factors: "1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Senecal*, 976 F. Supp. 2d at 213-214 (citing *Johnson*, 931 F.2d at 209–10). No one factor is dispositive. *Id*.

As to the first factor, the Court finds that HVDDSO's alleged role was ascertainable at the time Plaintiff filed her initial EEOC complaint such that she could have named HVDDSO.

According to Plaintiff's own allegations, she was first employed by HVDDSO before becoming a union delegate of CSEA, and knew that Townsend was employed by HVDDSO at all relevant times. (Compl. ¶¶ 8, 9, 12.) Plaintiff also alleges that CSEA represented her or should have represented her as a union member in an incident at HVDDSO, and thus knew they were separate entities. (*See* Compl. ¶ 23); *see also Wallace v. Seacrest Linen*, 04-CV-6035 (GBD), 2006 WL 2192777, at *7 (S.D.N.Y. Aug. 2, 2006) (noting, in consideration of first factor in identity of interest analysis it could be concluded that "plaintiff knew the role of … union defendant, to be different from that of employer defendant[] since his union" had taken an adversarial position against employer in past representation of plaintiff). This factor bodes in favor of HVDDSO.

As to the second factor, Plaintiff presumably argues that the parties are sufficiently similar because Townsend worked for both HVDDSO and CSEA, and held a supervisory role over Plaintiff in his capacity as an employee of both entities. (*See* Pl. Opp'n. to HVDDSO at 11-12.) As a preliminary matter, it is worth noting that "courts in this Circuit have consistently held that unions and employers lack the clear identity of interest required to waive … Title VII … requirements." *Wells v. Mount Vernon Hosp.*, 01-CV-9129 (RCC), 2002 WL 1561099, at *3 (S.D.N.Y. July 15, 2002) (collecting cases); *see Schaefer v. Erie County Dept. of Social Servs.*, 82 F. Supp. 2d 114, 116-117 (W.D.N.Y. 2000) (finding no identity of interest and noting that the union's "primary function is to represent ... employees in negotiating the terms and conditions of their employment, and in the administration of employee grievances against the employer ... [i]t is an entity completely separate from and independent of [the employer], and would in no way be bound by the [employer's] voluntary conciliation in the EEOC proceeding"); *see Tappin v. Metro. Sub. Bus Auth.*, 12-CV-2016 (JS) (AKT), 2014 WL 1330649, at *4 (E.D.N.Y. Mar. 31, 2014) (noting, "the interests of unions and of the employer are not so similar that it would be unnecessary

to name one to the exclusion of the other in an EEOC charge"); *Wallace v. Seacrest Linen*, 04-CV-6035 (GBD), 2006 WL 2192777, at *7 (S.D.N.Y. Aug. 2, 2006) (finding interests between named and unnamed parties dissimilar where two parties "sometimes [assumed] adversarial roles" and the "EEOC would not have been able to achieve a voluntary resolution of plaintiff's complaint against the [unnamed party] without including [that party] at the table"); *Bright v. Le Moyne Coll.*, 306 F. Supp. 2d 244, 257 (N.D.N.Y. 2004) (noting, where allegations included constructive discharge that union and employer interests were "not sufficiently similar for the purpose of obtaining conciliation and compliance.").

Furthermore, where courts have found an identity of interest between entities named in the EEOC charge and those not named, more has been required, namely, the two entities have been far more intertwined. *See, e.g.*, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (named and unnamed entities share identical interests where unnamed entity approved all personnel decisions at named entity "*and thus* [the two entities] ha[d] identical interests with respect to conciliation and compliance."); *Dortz*, 904 F. Supp. at 143 (finding the second element satisfied because employees of the unnamed party "were directly involved in the events giving rise to th[e] action" and employees of two entities shared responsibilities for administering joint program, jointly participated in policy-making, unnamed *entity was bound by named entity's discrimination policy, and named entity had right to secure compliance with EEOC law from unnamed entity*) (emphasis added); *Brodie v. New York City Transit Auth.*, 96-CV-6813 (LMM), 1998 WL 599710, at *6 (S.D.N.Y. Sept. 10, 1998) ("the interests of the named and unnamed parties are not so similar as to make inclusion of the unnamed parties unnecessary to fulfill the purposes of conciliation and compliance. Such similarity of interest has been found only in cases where the named and unnamed parties are aligned in some way such that efforts at conciliation

with one would render similar efforts with the other unnecessary, as might be the case, for example, with regard to a parent company and its subsidiary.") (citing *Cook*, 69 F.3d at 1241–42 (2d Cir. 1995)); *see also Hafez v. Avis Rent A Car Sys., Inc.*, 242 F.3d 365 (2d Cir. 2000) (affirming denial of motion to add claims against supervisors not named in the EEOC charge where plaintiff was aware of "role of the various supervisors in the alleged discriminatory and retaliatory incidents when he filed the EEOC charges" and the interest of supervisors and employer were distinct); *Perkins v. Davis*, 4:14-CV-01755 (SPM), 2015 WL 3572501, at *4 (E.D. Mo. June 5, 2015) ("An employer-employee relationship, standing alone, cannot create such similarity of interests … that it would have been unnecessary to include [the unnamed party] in the EEOC proceeding."); *Fox v. City University of New York*, 94-CV-4398, 1998 WL 273049, *5 (S.D.N.Y. May 27, 1998) (that plaintiff named an employee of the unnamed defendant in text of EEOC charge counted towards finding an identity of interest *where entities were intertwined in their functioning*) (emphasis added).

Given relevant jurisprudence on this point, even accepting Plaintiff's allegations that CSEA and HVDDSO share an employee as true, the allegations do not support the inference that their interest are so similar that it would have been unnecessary to include HVDDSO in the EEOC proceedings. As such, this factor weighs in Defendant's favor.

The third factor "asks 'whether [the unnamed party's] absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party [.]'" *Senecal*, 976 F. Supp. 2d at 226 (citing *Johnson*, 931 F.2d at 210.)) "Courts have found the third factor ... [weighs in Plaintiff's favor] where the agency in which the plaintiff filed his or her administrative charge took no conciliatory action." *Cappelli v. Jack Resnick & Sons, Inc.*, 13-CV-3481 (GHW), 2014 WL 4188084, at *4 (S.D.N.Y. Aug. 22, 2014) (internal quotations marks and citations omitted); *see*

*Zustovich v. Harvard Maint., Inc.*, 08-CV-6856 (HB), 2009 WL 735062, at *9 (S.D.N.Y. Mar. 20, 2009) ("By definition, then, where there is no conciliatory action in the agency proceeding, there is no prejudice to the unnamed party"); *compare Capelli*, 2014 WL 4188084, at *4 (citing "Dismissal and Notice of Rights" and language therein indicating "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes") *with* Compl. at 14 (Dismissal and Notice of Rights form indicating EEOC unable to conclude from investigation violation of statutes occurred); *cf. Schaefer*, 82 F. Supp. 2d at 117 ("[T]he absence from the EEOC proceeding has prejudiced [the Union], since it has not been provided the opportunity to demonstrate its lack of involvement in any alleged discrimination" with regard to the charge in which it was not named). Because it is unclear whether the EEOC engaged in any attempt at conciliation from which HVDDSO was excluded, this factor does not weigh in favor of either party.

Finally, as to the fourth factor, there is no indication that HVDDSO represented to Plaintiff that her relationship with HVDDSO should be conducted through CSEA. *Wallace*, 2006 WL 2192777, at *7 (plaintiff failed to demonstrate fourth factor where "nothing in the record suggests that union defendant conveyed to plaintiff that plaintiff's relationship to union defendant should be conducted only through the employer.") As such, applying the bulwark of case law on this point, Plaintiff has not demonstrated that the CSEA and HVDDSO share an identity of interest such that this exception should apply here.

c. Remaining Exceptions Asserted by Plaintiff

Plaintiff also asserts that her action should be allowed to proceed against HVDDSO despite a failure to exhaust because the EEOC could have inferred from the facts asserted in the Charging

Complaint that the named Defendant, CSEA, and the unnamed Defendant, HVDDSO, were part of a "common discriminatory scheme." (*See* Pl. Opp'n. to HVDDSO at 10.)

Where a party is not named in the EEOC charge, and does not share an identity of interest with the named party, it is possible for a plaintiff's claims against the unnamed party to survive dismissal based upon this "common discriminatory theme" exception. *Coleman v. Bd. of Educ.*, 96-CV-4293 (LAP), 1997 WL 452029, at *3 (S.D.N.Y. Aug. 7, 1997). However, "[c]ourts look to the allegations in the EEOC charge to determine whether the [EEOC] could have discerned [such a] scheme between the named and unnamed parties … If the EEOC could have so inferred, the action against the unnamed party may properly continue. *Id*. (citing *Johnson*, 931 F.2d at 210)). However, where a plaintiff fails to make reference to the unnamed party, it follows that it would not have been possible for the EEOC to infer from the allegations in the charge that the unnamed entity was participating in a common scheme to discriminate against plaintiff. *Coleman*, 1997 WL 452029, at *3 (S.D.N.Y. Aug. 7, 1997) (claim against unnamed party fails to satisfy common discriminatory scheme where plaintiff failed to mention unnamed party in EEOC charge, or to mention any of unnamed party's discriminatory acts because "it would not have been possible *for the EEOC to have inferred* from the charge submitted to it that the [unnamed party] was participating in a common discriminatory scheme with the named party.") (emphasis added); *see Bright v. Le Moyne Coll.*, 306 F. Supp. 2d at 257–58 ("Common discriminatory scheme …. exception is inapposite … [where] plaintiff's EEOC charge does not even mention the unnamed Union.") Although Plaintiff articulates this standard, she appears to argue only that, based upon the facts asserted in the federal complaint, the "involved parties" could "easily infer" a common discriminatory theme. (*See* Pl. Opp'n. to HVDDSO at 10.)

The parties do not dispute that Plaintiff's first EEOC Charge, No. 02661: does not mention HVDDSO; does not indicate that HVDDSO played any role in the discrimination; mentions only Plaintiff's and Townsend's employment at CSEA; and complains of harassment by Townsend, as CSEA President, at, as Defendant points out, CSEA offices and events, among other allegations directly against CSEA, including that she was constructively discharged from her position due to acts perpetrated specifically by CSEA, and Townsend in his role at CSEA (as specified in the Complaint). (*See* Haberman Decl., Ex A (Charging Complaint for EEOC Charge No. 51); Morris Decl., Ex A (same).) Defendant correctly notes that the Charge does not contain any mention that Plaintiff or Townsend were employed by HVDDSO, let alone that Plaintiff experienced any adverse employment action as an HVDDSO employee. (*Id.*) On this basis, the Court cannot find that the EEOC could have inferred collusion between HVDDSO and CSEA from the allegations in the charging complaint, and as such, the "common discriminatory theme" exception does not apply.[14]

Nor is the Court convinced by Plaintiff's argument that she should be exempt from exhaustion because HVDDSO either had notice of the EEOC Complaint separately, or through CSEA because the entities are so closely related that charging CSEA would suffice to provide notice to HVDDSO.[15] (*See* Pl. Opp'n. to HVDDSO at 11-12.) Plaintiff cites *Drummer v. DCI Contracting Corp.*, 772 F. Supp. 821 (S.D.N.Y. 1991), in which the court noted that the

---

[14] Nor is the Court convinced by Plaintiff's argument that by erroneously identifying Pamela Alexander, a CSEA employee, as an employee of OPWDD Labor Relations (with HVDDSO being a regional office of OPWDD), the EEOC could have inferred a common discriminatory scheme between the two entities. (*See* Pl Opp'n. to HVDDSO at 2 (arguing reference sufficient to satisfy exception); *see Gonzalez v. Police Com'r Bratton*, 96-CV-6330 (VM), 2000 WL 1191558, at *28 (S.D.N.Y. Aug. 22, 2000) ("several references" to unnamed party in affidavit attached to charge not sufficient to put EEOC on notice of potential common scheme).

[15] As to Plaintiff's argument that CSEA and HVDDSO are so closely related that notice to CSEA suffices as notice to HVDDSO, the Court has addressed this contention as part of its "identity of interest" discussion, *see supra*, at 22-25, and finds an exception is not appropriate on this ground either. *See Cole*, 2010 WL 3747591, at *6 ("courts in the Second Circuit have held consistently that unions and employers generally do not share the clear identity of interest necessary to waive Title VII and ADEA notice requirements").

prerequisite requiring that a party be named in an EEOC Charge prior to suit is a "notice requirement [which] serves the two important purposes of notifying the charged party of the asserted violation and permitting the effectuation of Title VII's primary goal of securing voluntary compliance with the law by bringing the charged party before the EEOC." 772 F. Supp. at 828. Defendant contends that it did not have notice of an EEOC Charge until January 2016, "more than six months after the limitations period had expired," nor an opportunity to participate in any EEOC proceeding, an assertion Plaintiff never contests. (*See* HVDDSO Reply Mem. Supp. Mot. Dismiss ("HVDDSO Reply"), at 3 n.3, ECF No. 57; HVDDSO Mem. at 10; *see generally* Pl. Opp'n. to HVDDSO.) This corresponds with Plaintiff's narrative of events, as it asserts that the "Form 5" through which Plaintiff allegedly amended the original EEOC Charge No. 02661 to add HVDDSO, was ultimately submitted with Plaintiff's required signature in January 2016. Plaintiff has not properly asserted that an exception to the exhaustion requirement is warranted on the ground that HVDDSO had timely notice of the original charge.

Finally, Plaintiff argues that her claim against HVDDSO should survive despite failure to exhaust because her claims against HVDDSO are "reasonably related" to those contained in the initial EEOC Charge. As is apparent from the single case Plaintiff cites in support of this contention,[16] this exception applies where a plaintiff wishes to add additional *claims* closely related to those asserted in the EEOC Charge, not where she seeks to add a new party not previously named as a respondent in the Charge. Plaintiff points to no case law where a court applied this exception to permit unexhausted claims to proceed against an unnamed party.

---

[16] Plaintiff cites *Gaston v. New York City Dep't of Health Office of Chief Med. Examr*, 432 F. Supp. 2d 321 (S.D.N.Y. 2006). (*See* Pl. Opp'n. to HVDDSO at 12.) But this is inapposite because this case involves a plaintiff's attempt to assert *additional claims* against parties already named in the EEOC Charge.

For the foregoing reasons, the Court finds that Plaintiff has not exhausted her claims against HVDDSO, nor do any of the exceptions to exhaustion, identified by Plaintiff, apply in this instance. As such, Plaintiff's claims against HVDDSO are dismissed as asserted for lack of subject matter jurisdiction because she failed to exhaust administrative remedies.[17]

### III.  Defendant Basil Townsend

#### a.  Title VII Claim Against Townsend

Plaintiff asserts a Title VII claim against Townsend as an agent of HVDDSO and CSEA. (*See generally*, Compl. ¶ 6.)  Defendant posits that an individual cannot be held liable in his capacity as an agent for these entities.  (*See* Townsend Mem. at 3.)

"The Second Circuit has determined that the remedial provisions of Title VII do not provide for individual liability."  *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 360 (S.D.N.Y. 2016) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *see Patterson*, 375 F.3d at 221 (2d Cir. 2004) ("individuals are not subject to liability under Title VII.") (internal quotation marks and citations omitted); *id*. (citing *Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 534 (S.D.N.Y. 2001)) ("an employer's agent may not be held individually liable under Title VII, even if she has supervisory control over the Plaintiff").  Nor can a Title VII claim prevail against a defendant in his official capacity.  *Id*. ("plaintiff cannot assert any Title VII retaliation claims against the Individual Defendants, even in their official capacities, and all such claims are dismissed.")  As

---

[17] Because the Court finds that Plaintiff has failed to exhaust his administrative claims against HVDDSO, it need not consider HVDDSO's alternate arguments in favor of dismissal, but notes that Plaintiff has conceded that her NYSHRL claim against HVDDSO is barred by the Eleventh Amendment and is assumed to have abandoned this claim.  (*See* Pl. Opp'n. to HVDDSO at 20-21.)  Because the Court finds that Plaintiff has failed to exhaust his administrative claims against HVDDSO, it need not consider HVDDSO's alternate arguments in favor of dismissal.

such, Plaintiff's Title VII claims against Defendant Townsend in his individual and official capacities are dismissed.

### b. NYSHRL Claim Against Townsend as Employee of HVDDSO

Defendant argues that Plaintiff's NYSHRL claims against HVDDSO are barred by the Eleventh Amendment, and as such, he cannot be held liable for aiding and abetting HVDDSO in violation of this law. (*See* Townsend Mot. Dismiss, at 4, ECF No. 27.) Plaintiff concedes that this claim cannot be maintained against Townsend in his capacity *as employee of HVDDSO*, a state agency. (*See* Pl. Opp'n. to Townsend Mot. to Dismiss, at 5, ECF No. 66.) Plaintiff argues, however, that his NYSHR law claim remains against Townsend as an employee of CSEA. (*Id.*) Defendant apparently concedes this point, as he did not move to dismiss Plaintiff's claim on this ground, nor did he submit a reply brief contesting this point. Thus, Plaintiff's NYSHRL claim is dismissed only as asserted against Townsend in his capacity as *an employee of HVDDSO*.

## CONCLUSION

For the foregoing reasons, the motions to dismiss submitted by Defendants CSEA and Townsend are GRANTED in part and DENIED in part. Defendant HVDDSO's motion is GRANTED. Should Plaintiff seek to file an Amended Complaint, he is directed to do so in accordance with this Opinion by September 20, 2017. Defendants are directed to answer by October 20, 2017. The parties are directed to appear for an initial pre-trial conference on October 27, 2017 at 11:30 a.m. at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties are also directed to submit a completed Scheduling Order (see attached) to the Court prior to the initial conference. Plaintiff's claims against HVDDSO are dismissed in accordance with this Opinion, and the Clerk of Court is respectfully

directed to terminate this party from the action. The Clerk of Court is also directed to termination

the motions at ECF Nos. 27, 28 and 59.

Dated:    September ⁊, 2017
          White Plains, New York

                                    SO ORDERED:


                                    _____
                                    NELSØN S. ROMÁN
                                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. May 2014

-------------------------------------------------------------x

                    Plaintiff(s),

- against -

                    Defendant(s).

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

\_\_\_\_\_ CV _____ (NSR)

-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.     All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.     This case [is] [is not] to be tried to a jury.

3.     Joinder of additional parties must be accomplished by _____.

4.     Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5.     Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.     First request for production of documents, if any, shall be served no later than
_____.

7.     Non-expert depositions shall be completed by _____.

      a.     Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.     Depositions shall proceed concurrently.

      c.     Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.     Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.     Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
      _____

_____
Nelson S. Román, U.S. District Judge