UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLENE PERCY,

                   Plaintiff,

    -against-

LOCAL 412 OF THE CSEA, INC., LOCAL 1000,
AFSCME AFL-CIO, and BASIL TOWNSEND,

                 Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/9/2022__

No. 16-cv-5304 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Violene Percy ("Plaintiff") brings this action against Defendants Local 412 of the CSEA, Inc. ("CSEA"),[1] and Basil Townsend ("Townsend") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*.  Before the Court is Defendant CSEA's motion for summary judgment.  For the foregoing reasons, CSEA's motion is GRANTED.

## BACKGROUND

    The following facts are derived from the record, the parties' Rule 56.1 statements,[2] declarations, and affidavits.  They are not in dispute unless otherwise noted.

    *I.     CSEA and Plaintiff*

---

[1] Fashioned on the docket as "Local 412 of the CSEA, Inc., Local 1000, AFSCME AFL-CIO."

[2] Plaintiff asserts in response to a number of Defendants' statements that she does not have the specific knowledge or information necessary to admit or deny the statement.  Such responses function as admissions under Local Civil Rule 56.1.  *See Universal Calvary Church v. City of New York*, No. 96 CIV. 4606 (RPP), 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000); *Aztar Corp. v. NY Entertainment, LLC*, 15 F. Supp. 2d 252, 254 n.l (E.D.N.Y. 1998).

CSEA is a worker union formed as a not-for-profit corporation existing under the laws of the State of New York.  (Plaintiff's Response to Defendant, CSEA's Statement Pursuant to Local Rule 56.1 and Plaintiff's Statement of Undisputed Facts ("56.1") ECF No. 96, ¶¶ 1-2.)  It represents certain employee bargaining units in negotiations, including the New York State Institutional Services Unit ("ISU").  (*Id*. ¶ 2.)  The ISU consists of employees of the New York State Office for People with Developmental Disabilities ("OPWDD").  (*Id*.)  CSEA Local 412 is a subdivision of CSEA, and it represents employees in the ISU that work for OPWDD at the Hudson Valley Developmental Disabilities Services Office ("HVDDSO").  (*Id*. ¶ 3.)

New York (the "State") and CSEA were parties to a Collective Bargaining Agreement (the "Agreement") that applied to all employees in the ISU.  (*Id*. ¶ 7 Ex. F..)  The Agreement established a procedure for disciplinary proceedings instituted against employees in the ISU and, among other things, permitted the State to interrogate ISU employees regarding alleged wrongdoing, with a CSEA representative if requested.  (*Id*. ¶¶ 8-10.)   In order to comply with the disciplinary procedure, the State had to serve the employee with a Notice of Discipline ("NOD") that had to contain a description of the alleged acts and the proposed penalty.  (*Id*. ¶ 11.)  Once the NOD is served, the State can place the employee on a suspension without pay pending the outcome of the procedure.  (*Id*. ¶ 12.)  If the employee wants to challenge the discipline, he or she can file a grievance which serves as a demand for arbitration.  (*Id*. ¶ 13.)  Once a grievance is filed, the matter is scheduled for an expedited resolution meeting where the employee can present their facts to an arbitrator.  (*Id*. ¶ 14.)  If the matter is not resolved during the meeting, the employee can request a one-day hearing or a full arbitration.  (*Id*. ¶ 17.)

On August 7, 2003, Plaintiff was employed by OPWDD at HVDDSO as a Developmental Aide Trainee.  (*Id*. ¶¶ 20-21.) Plaintiff was later promoted to the position of House Manager.  (*Id*.

¶ 22.)  As a House Manager, Plaintiff was assigned to the Midland Lakes Individual Residential Alternative ("Midland") which housed six nonverbal, developmentally disabled consumers.  (*Id*.) Plaintiff supervised ten employees.  (*Id*.)

While employed by the State, Plaintiff was a member of CSEA and successfully ran for the position of Delegate.  (*Id*. ¶¶ 23-24.)  CSEA's Constitution and By-Laws state that "[m]embers of each Local shall elect from their membership one or more delegates and/or alternates to represent the members of the Local at all meetings of the Association . . . ."  (Affidavit of Kimberly Salamida ("Salamida Aff.") ECF No. 94, Ex. A at 14.)  Delegates are tasked with "attend[ing] the general business sessions" and "report[ing] on the business and other programs . . . to their Local Executive Board."  (*Id*. at 15.)  In this capacity, Plaintiff attended conventions and meetings on behalf of CSEA.  (56.1 ¶ 25.)  Plaintiff did not receive a salary, benefits, or employee tax statements from CSEA, but did receive reimbursement for her travel and expenses.  (*Id*. ¶¶ 27-29, 32.)

## II.    *The Incident*

On January 14, 2014, while Plaintiff was working as a House Manager at Midland, a developmentally disabled consumer, referred to as "RT", eloped from the establishment (the "Incident").  (56.1 ¶¶ 33-34.)  Instead of reporting that RT eloped, Plaintiff decided to report that another consumer, referred to as "FP" eloped, as RT's sister was outspoken and involved and Plaintiff did not want to lose her job.  (*Id*. ¶¶ 35-36.)  The State later learned that RT had eloped, and an investigation was undertaken.  (*Id*. ¶ 37-38.)  Plaintiff was interviewed by an investigator from the New York State Justice Center for the Protection of People with Special Needs.  (*Id*. ¶ 38.)  Then in June of 2014, Plaintiff was interrogated by the same investigators, where she requested a CSEA representative and was represented by CSEA Second Vice President Carole

Jeannot and Secretary Vivienne Brunson-Bedi.  (*Id*. ¶¶ 31; 42-44.)  Plaintiff was then placed on

paid administrative leave.  (*Id*. ¶ 45.)

On July 14, 2014, the State served Plaintiff with a NOD and suspended her without pay.

(*Id*. ¶¶ 46-47; Declaration of Leslie C. Perrin ("Perrin Decl.") ECF No. 94, Ex. G.)  As CSEA

President, Basil Townsend, was not available that day, Jeannot represented Plaintiff at this time.

(56.1 ¶ 46.)  The NOD contained five charges of misconduct related to the Incident, including:

> **Charge 1:** On January 4, 2014, at approximately 11:00 AM, while on duty at
> Midland Lakes IRA, you failed to adequately staff the residence when you left co-
> worker JA alone with five Individuals, one requiring Eyes-On Supervision.
>
> **Charge 2:** On January 4, 2014, while on duty at Midland Lakes IRA, you failed to
> notify any appropriate authority of the elopement of Individual RT.
>
> **Charge 3:** On January 14, 2014, you filed a false instrument, when you gave a
> written statement of the above related Incident indicating the Individual who eloped
> was FP, when in fact it was RT.
>
> **Charge 4:** On March 28, 2014, during your interrogation regarding the situation
> which resulted in Charges 1 and 2, you were less than truthful when you indicated
> that the Individual who eloped was FP, when in fact it was RT.
>
> **Charge 5:** From January 4, 2014 through June 26, 2014, you conspired to maintain
> that the Individual who eloped was FP, when in fact it was RT, thereby obstructing
> an official investigation.

(*Id*. ¶ 48; Perrin Decl. Ex. G.)  The NOD also stated the State sought to terminate Plaintiff's

employment.  (56.1 ¶ 49.)  Two of Plaintiff's subordinates, Mirvelene Souffret and Jessica

Anderson, also received NODs related to the Incident with the same penalty sought.  (*Id*. ¶ 51;

Salamida Aff. Exs. G & H.)

After receiving the NOD, Plaintiff spoke to Jeannot about her options.  (56.1 ¶ 52.)  Jeannot

told Plaintiff she could fight the charges or resign.  (*Id*.)  Plaintiff stated she wanted to fight.  (*Id*.)

Jeannot then told Plaintiff that she would file a grievance challenging the discipline on her behalf.

4

(*Id*. ¶ 53.)  On July 21, 2014, Plaintiff signed a State/CSEA Disciplinary Grievance Form that disputed the NOD and stated she was not guilty.  (*Id*. ¶ 54; Perrin Decl. Ex. J.)

On September 11, 2014, Plaintiff's NOD and grievance were scheduled for an expedited resolution meeting.  (56.1 ¶ 56.)  At the meeting, CSEA Labor Relations Specialist, Pamela Alexander represented Plaintiff, and Jeannot was present to lend her support.  (*Id*. ¶ 58.) Alexander always represents the CSEA members who work for the State at HVDDSO at expedited arbitration meetings.  (*Id*. ¶ 64.)  At the meeting, the State would only accept Plaintiff's termination or resignation.  (*Id*. ¶ 66.)  Plaintiff admitted to Alexander that she had not been truthful about the Incident, and Alexander explained Plaintiff's options.  (*Id*. ¶¶ 67-68.)  Plaintiff's options were to request a one-day hearing before the arbitrator, an Article 33 arbitration, or to resign.  (*Id*. ¶ 68.) Plaintiff requested and was granted the opportunity to plead her case to the arbitrator during the meeting.  (*Id*. ¶ 72.)

At the conclusion of the meeting, Plaintiff resigned her employment with the State.  (*Id*. ¶ 74.)  Plaintiff signed a State of New York Resignation Form, which acknowledged that she was aware she had the right to refuse to sign the document, that she had the right to file a grievance and proceed to arbitration, and that she had the right to representation by CSEA or private counsel. (*Id*. ¶ 75; Perrin Decl. Ex. K.)  Plaintiff did not tell Alexander that she wanted Townsend to represent her at any point of the disciplinary process.  (56.1 ¶ 90.)

Souffret and Anderson both received discipline in the form of a six-month unpaid suspension and termination held in abeyance for one year.  (*Id*. ¶ 79; Salamida Aff. Exs. I & J.) They were both represented by Alexander at their expedited arbitration meetings.  (56.1 ¶ 82.)

III.     *The Current Action*

On June 5, 2015, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") against CSEA.  (*Id.* ¶ 103; Perrin Decl. Ex. L.)  Plaintiff filed suit against CSEA, Townsend, and the HVDDSO on July 26, 2016.  (ECF No. 1.)  On September 7, 2017, this Court issued an Opinion and Order granting in part and dismissing in part motions to dismiss filed by CSEA and Townsend, and granting HVDDSO's motion to dismiss, dismissing it from this action.  (ECF No. 69.)  On May 20, 2019, CSEA filed a motion for summary judgment. (ECF No. 94.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice.  *Bickerstaff v. Vassar Coll*., 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co*., 607 F.3d 288, 292 (2d Cir. 2010) (holding the

nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc*., 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys*., 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id*. at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

CSEA seeks summary judgment on the grounds that: (i) Plaintiff's Title VII claim is facially deficient because she was never an employee of CSEA within the meaning of Title VII; (ii) Plaintiff's Title VII claim fails because she does not allege any discriminatory conduct by CSEA; (iii) Plaintiff's Title VII retaliation claim is deficient insofar as there is no dispute that CSEA was not aware of Plaintiff's protected activity and therefore could not have retaliated against her; and (iv) Plaintiff also fails to assert a prima facie NYSHRL claim for similar reasons to points (i) through (iii). The Court examines each of CSEA's arguments below.

## I.     Whether CSEA Was the Employer of Plaintiff Subject to Liability under Title VII and the NYSHRL

Under Title VII[3] a plaintiff may assert discriminatory or retaliatory conduct against both employers and labor organizations.  42 U.S.C. § 2000e(b) and (d).  CSEA alleges that Plaintiff filed suit against it as an employer, but CSEA does not meet the standard for an employer under the statute.  As discussed further below, the Court holds that no reasonable juror could find that CSEA was the employer of Plaintiff.  Instead, Plaintiff presents a threshold basis for naming CSEA as a defendant based on its status as a labor organization.

### a.  CSEA as an Employer

Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current[ or preceding calendar year, and any agent of such a person[.]" 42 U.S.C. § 2000e(b). The Supreme Court has stressed that, "when Congress has used the term 'employee' without defining it, . . . Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Comty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989).  The Court also provided a non-exhaustive, thirteen-factor list of considerations:

> the hiring party's right to control the manner and means by which the product is accomplished . . . .[;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the

---

[3] Plaintiff brings claims under both Title VII and the NYSHRL.  It is well established that "[t]he NYSHRL mirrors the[] federal obligations" under Title VII.  *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("claims brought under [the NYSHRL] are analytically identical to claims brought under Title VII"). Therefore, "[t]he analysis used to determine whether an entity is an individual's employer pursuant to the [NYSHRL] . . . is substantially the same as that used under Title VII."  *Shipkevich v. Staten Island Univ. Hosp.*, No. 08-CV-1008 (FB) (JMA), 2009 WL 1706590, at *3 (E.D.N.Y. June 16, 2009).  As the parties appear to agree, (Memorandum of Law of Defendant CSEA in Support of its Motion for Summary Judgment ("CSEA's Mem.") ECF No. 94 at 15, 20; Memorandum of Law in Opposition to Defendant CSEA's Motion for Summary Judgment ("Pl.'s Opp.") ECF No. 97 at 7-11), the Court will analyze Plaintiff's alleged employment under Title VII standards for both claims.

method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id*. at 751–52.

However, "courts turn to common-law principles to analyze the character of an economic relationship 'only in situations that plausibly approximate an employment relationship.'" *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) (quoting *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir. 1990)). Therefore, a "prerequisite" to determine whether an individual is an employee is that he or she has been "hired." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006). Whether an individual has been hired depends primarily on whether he or she has received "remuneration" from the alleged employer. *Id.*; *O'Connor*, 126 F.3d at 115–16. "Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist . . . ." *O'Connor*, 126 F.3d at 115–16 (citing *Graves*, 907 F.2d at 73).

The financial benefit required does not necessarily have to be a salary or wages, instead the employee may receive remuneration in the form of benefits. *Id.* at 116. For example, the Second Circuit has held that an unpaid intern was not an employee within the meaning of Title VII where she received "no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay, nor was she promised any such compensation," and that this was distinguishable from a case involving a volunteer firefighter who did receive "a state-funded disability pension, survivors' benefits for dependents, scholarships for dependents upon death or disability, group life insurance, and several other benefits." *Id.* (discussing *Haavistola v. Cmty. Fire Co.*, 6 F.3d 211, 221 (4th Cir. 1993)).

Here, the Court holds that no reasonable juror could find that CSEA was the employer of Plaintiff.  As Plaintiff was elected as a delegate of CSEA and not provided a salary or any benefits, she cannot show that she was hired or received any remuneration.  *See Williams-Lawson v. Subway Surface Supervisors Ass'n*, No. 20 Civ. 8544 (PGG) (SLC), 2021 WL 4943554, at *8 (S.D.N.Y. June 21, 2021) ("the undisputed record on the Motion reflects that [the plaintiff] was elected, not hired, and therefore she has not demonstrated the 'prerequisite' showing that she was an employee under Title VII").

First, Plaintiff argues she received several benefits during her time as a CSEA delegate, including voting and representing members and participating in meetings and in decision making. (Pl.'s Opp. at 9.)  However, these are not the "benefits" courts consider in analyzing employment, instead these items appear to be a CSEA delegate's tasks and responsibilities.  If the Court were to accept these tasks as "benefits," then any alleged employment would meet this standard.

Second, Plaintiff testified that she received checks from CSEA, and that she did not know if they were "wage statements."  (Perrin Decl. Ex. C at 24:2-13.)  However, later in the deposition, she is shown an example check and states she received it as reimbursement for travel.  (*Id*. at 27:9–28:22.)  Reimbursement is generally not substantial enough to be considered remuneration.  *See Hughes v. Twenty-First Century Fox, Inc*., 304 F. Supp. 3d 429, 444 (S.D.N.Y. 2018) (holding travel expenses and hair and make-up services fell short of the "minimum level of significance or substantiality" required to show employee status) (citing *York v. Assoc. of the Bar of the City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002)); *Pastor v. P'ship for Children's Rights*, No. 10-cv-5167 (CBA)(LB), 2012 WL 4503415, at *2 (E.D.N.Y. Sept. 27, 2012) (holding reimbursement for legal education courses was not a substantial job-related benefit that would give rise to an employment

relationship).  As Plaintiff has not shown any other checks she received for other reasons, these purported checks cannot satisfy the remuneration standard.

Lastly, Plaintiff avers that she was entitled to other benefits, as CSEA lists on its website that members have access to insurance, grants, scholarships, and enrollment in college programs. (Pl.'s Opp. at 10.)  However, what Plaintiff is potentially entitled to is not relevant to the test, instead Plaintiff must show that she received, or at the very least was promised, some remuneration.  *See, e.g., Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 473 (2d Cir. 1999) ("we think it is clear that an employment relationship within the scope of Title VII can exist even when the putative employee receives no salary so long as he or she gets numerous job-related benefits"); *O'Connor*, 126 F.3d at 116 ("It is uncontested that O'Connor received from Rockland no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay, nor was she promised any such compensation.").  As Plaintiff has failed to make this showing, she is unable to meet the threshold requirement of finding an employer-employee relationship under Title VII.

## II.      Whether Plaintiff Asserted Claims Against CSEA as Her Labor Organization

The above notwithstanding, Plaintiff argues that Title VII applies to both employers and labor organizations, and thus CSEA can be held liable as her labor organization regardless of whether it is her employer.  (Pl.'s Opp. at 7.)  "Under Title VII, a union may fall within the definitions of both 'employer' and 'labor organization.'"  *Yerdon v. Henry*, 91 F.3d 370, 375 (2d Cir. 1996).  However, the plaintiff must still show the union satisfies the definition of "employer" under the statute.  *Id*. at 377.

In response, CSEA avers that both Plaintiff's EEOC charge of discrimination and Amended Complaint do not include any claims against CSEA as her labor representative.  (CSEA Mem. at 17-18.)  However, both documents allege broadly that CSEA violated Plaintiff's "rights under

Title VII." (Am. Compl. ¶ 31; Perrin Decl. Ex. L ¶ 24.) These rights may include claims against CSEA as a labor organization. Further, the allegations in both the charge of discrimination and Amended Complaint deal with Plaintiff's membership rights, not any alleged terms of employment. *See Yerdon v. Teamsters Local 1149, Int'l Bhd. Of Teamsters*, 886 F. Supp. 226, 231 (N.D.N.Y. 1995) ("The apparent intent of Congress in enacting § 2000e-2(c) was to prohibit discrimination by labor unions *when acting as unions and in respect to its dealings with employers.*" (emphasis in original) (citation omitted)).

CSEA seems to take issue with the fact that Plaintiff does not explicitly describe CSEA as a labor organization, but the Court does not find this to be persuasive. CSEA avers that the Amended Complaint states that Plaintiff was "hired" by CSEA, that she "worked for" CSEA, and references her "employment" with CSEA. (CSEA's Mem. at 17.) However, besides these descriptions, CSEA does not explain how the allegations contained in Plaintiff's Amended Complaint would differ if Plaintiff had instead called CSEA her labor organization. Regardless of how CSEA is described, Plaintiff's allegations would be the same.

CSEA cites *Yerdon v. Henry* to support its argument. 91 F.3d at 377. *Yerdon* involved a plaintiff who was hired as a secretary for a union, and also required to become a member. *Id*. at 373–74. The plaintiff filed suit against the union and other defendants for sexual discrimination and retaliation. *Id*. at 373. The Second Circuit held that because the labor union had fewer than fifteen employees, it did not meet the definition of employer under Title VII, and therefore could not be sued under Section 2000e-2(a). *Id*. at 375–77. The Court's decision does not indicate, as CSEA suggests, that where a union does not meet the definition of employer it cannot be sued as a labor organization instead. In fact, the Second Circuit did analyze the plaintiff's retaliation claim under the standard for labor organizations. *Id*. at 377 ("Yerdon must demonstrate the existence of

12

a union action by which she was disadvantaged as well as a causal connection between that action and the protected activity.").

CSEA also discusses Plaintiff's EEOC charge of discrimination and how "[t]his Court only has jurisdiction to hear claims that were raised in the EEOC charge or 'reasonably related' to the allegations stated in the EEOC charge." (CSEA's Mem. at 18 (citing *Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1401–02 (2d Cir. 1993)). However, here, all of the relevant allegations are included in Plaintiff's charge. Plaintiff alleges that CSEA failed to properly represent her during disciplinary hearings after she made sexual harassment allegations. (Perrin Decl. Ex. L ¶¶ 10, 17-18.) The purpose of the EEOC charge is "to notify the charged party of the alleged violation and also [to] bring[] the party before the EEOC, making possible effectuation of [Title VII's] primary goal of securing voluntary compliance with its mandates." *Vital v. Interfaith Med. Center*, 168 F.3d 615, 619 (2d Cir. 1999) (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981)). Here, this purpose is not undermined by allowing the claims to proceed against CSEA as a labor organization.

Accordingly, although the Court concludes that CSEA is not Plaintiff's employer for the purposes of Title VII, Plaintiff's claims are not facially deficient for this reason alone because CSEA can still be sued solely based on its status as a labor organization. Therefore, the Court will analyze Plaintiff's claims under the standard for labor organizations.

## I.      Title VII Discrimination

Plaintiff alleges that during her time as a CSEA delegate, she was repeatedly sexually harassed by Defendant Townsend. After rejecting Townsend's advances, Plaintiff alleges CSEA discriminated against her while representing her during the disciplinary proceedings. Title VII

makes it unlawful for a labor organization "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1). Claims under Title VII against labor organizations are "subject to an analysis different from that applicable to Title VII claims against employers." *Oparaji v. United Fed'n of Teachers*, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006). In these cases, a plaintiff seeking to sue a labor organization for discrimination must first demonstrate that the union breached its "duty of fair representation" to the member. *Id.* This duty is breached where the labor organization's "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith," *Nweke v. Prudential Ins. Co. of Am.*, 25 Supp. 2d 203, 220 (S.D.N.Y. 1998) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)), and the plaintiff can "demonstrate a causal connection between the union's wrongful conduct and their injuries", *Vaughn v. Air Line Pilots, Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010). Both the Supreme Court and the Second Circuit have emphasized that a court's review of such allegations is "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Vaughn*, 604 F.3d at 709 (quoting *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991)). The plaintiff must then show "some indication that the union's actions were motivated by unlawful discrimination or retaliation." *Oparaji,* 418 F. Supp. 2d at 146.

Here, Plaintiff alleges that CSEA acted in a discriminatory manner when (i) Townsend failed to represent her at the expedited resolution meeting as he had other similarly situated parties; (ii) CSEA refused to file a petition on her behalf; and (iii) CSEA gave her the ultimatum of either resigning or fighting and possibly facing criminal charges. (Pl.'s Opp. at 21-22.) CSEA avers that Plaintiff has failed to demonstrate a breach of the duty of fair representation as she was fairly

represented by CSEA, and there is no evidence of discriminatory intent.  (CSEA Mem at 22-24.)
The Court agrees with CSEA.

First, even accepting Plaintiff's contention that Townsend did not attend Plaintiff's
disciplinary proceedings, she has failed to assert conduct that was arbitrary, discriminatory or in
bad faith.  For example, whether Townsend attended her expedited resolution meeting is
inapposite, as Plaintiff was represented during the meeting by Pamela Alexander.  Alexander is a
labor relations specialist for CSEA, and she always represents members of HVDDSO at expedited
resolution hearings.  (Perrin Decl. Ex. E at 14:13-14; 27:1-4.)  However, Alexander did testify that
the President of CSEA "always" represents the member along with her.  (*Id*. at 27:10-12.)  Whether
Townsend did attend and assist with representing Plaintiff is in dispute.  (Perrin Decl. Ex. C at
87:14-25; Ex. E at 27:13-23.)

This dispute notwithstanding, conduct such as Townsend's alleged failure to represent
Plaintiff is as a matter of law insufficient to constitute a breach of fair representation.  Plaintiff has
failed to show how his absence was arbitrary, discriminatory, or in bad faith.  The Agreement
states that Plaintiff was "entitled to representation by CSEA or by private counsel selected at his
or her own expense at every step of the proceeding," it does not state that the President of CSEA
is required to represent each member.  (Salamida Aff. Ex. F. at 106.)  Further, Plaintiff has not
alleged that Alexander's general representation of her was deficient in any way, or that her
proceedings would have been any different if Townsend had participated.  Therefore, no
reasonable juror could find the required discriminatory action under Title VII.

In addition, Plaintiff has failed to show any indication that CSEA's actions were motivated
by discrimination.  This can be shown where the plaintiff presents similarly situated employees
outside of his or her protected class that were treated more favorable.  *See Grandy v. Manhattan*

15

*and Bronx Surface Transit Operating Auth.,* No. 16-CV-6278 (VEC), 2018 WL 4625768, at *16 (S.D.N.Y. Sept. 26, 2018) (finding the plaintiff failed to raise an inference of discriminatory animus where he provided no evidence that the comparator employee was similarly situated in any material respect).  Here, Plaintiff alleges that Townsend did not represent her like he did others that were similarly situated.  (Pl.'s Opp. at 23.)  The Court understands this to be a reference to Souffret and Anderson.  "To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).  Plaintiff has failed to make this showing.  Not only are Souffret and Anderson the subordinates of Plaintiff, but they were also provided slightly different charges than Plaintiff and claimed that they were following Plaintiff's orders during the Incident.[4]  (56.1 ¶¶ 79-81; Salamida Aff. Exs. G & H.)  Therefore, Plaintiff has failed to show they were materially similar to her.  *See Hesse v. Dolgencorp of N.Y., Inc.*, No. 10 Civ. 421 (WMS), 2014 WL 1315337, at *21 (W.D.N.Y. Mar. 31, 2014) ("Dollar General's District Manager[] cannot be said to be similarly situated to Plaintiff as her superior"); *Ortiz v. Brookstone Co.*, 274 F. Supp. 2d 456, 463–64 (S.D.N.Y. 2003) (holding the plaintiff's direct supervisor was not similarly situated to her as she had different responsibilities and was disciplined for different conduct).

Second, Plaintiff avers that Alexander refused to file a petition on her behalf and provided her the ultimatum of either resigning or facing possible criminal charges.  (Pl.'s Opp. at 21.)  However, these allegations are also insufficient, as Plaintiff has failed to proffer any evidence indicating that these alleged actions were motivated by unlawful discrimination.  Plaintiff alleges

---

[4] While Plaintiff denies directing Souffret and Anderson to falsely report the elopement, she does not dispute that Souffret and Anderson claimed this during their disciplinary proceedings.  (56.1 ¶ 80.)  Whether that is in fact true or not is not relevant to this analysis, as CSEA's treatment of the three depended on what was reported during the disciplinary proceedings.

broadly that as President of CSEA, Townsend had "a level of control" over Plaintiff's representation and the investigation, and therefore "it can reasonably be said that CSEA's actions were motivated by unlawful discrimination." (Pl.'s Opp. at 22.) However, this is insufficient at the stage, as no reasonable jury would find that Alexander's alleged actions were motivated by Plaintiff's refusal of Townsend's sexual advances.

Therefore, Plaintiff has failed to make a *prima facie* showing of Title VII discrimination, and CSEA's motion for summary judgment as to this claim is granted.

## II.    Title VII Retaliation

Title VII provides that

> [i]t shall be an unlawful employment practice for . . . a labor organization to discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this title . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a). To show a *prima facie* case of Title VII retaliation, a plaintiff must show that "(1) she was engaged in an activity protected under Title VII [], (2) the Union[ was] aware of [the plaintiff's] participation in the protected activity, (3) [the plaintiff] suffered adverse union decisions, and (4) there was a causal connection between the [] protected activity and the adverse action taken by the Union[]." *Nweke*, 25 Supp. 2d at 230.

Here, Plaintiff's retaliation claim fails for the same reason her discrimination claim has failed:  she has failed to proffer any evidence of a causal connection between her rejections to Townsend and the alleged adverse union decisions. A causal connection may be shown "indirectly by showing that the protected activity was closely followed in time by the adverse action," *id*. (citing *Manoharan v. Columbia Univ. College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)), or "through other evidence such as disparate treatment of fellow employees who

engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant," *id.* (citing *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir. 1991)). Plaintiff alleges broadly that a causal connection exists because "[a] reasonable inference may be drawn, and a factfinder thus could reasonably conclude, that Plaintiff's refusal of the unwanted sexual advances by the President of the local CSEA was the cause of the lack of representation of Plaintiff and the ultimatum which forced Plaintiff to sign a resignation letter." (Pl.'s Opp. at 23-24.)  That is insufficient at the summary judgment stage.

While a causal inference may be made through temporal proximity, the "temporal proximity must be very close." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). Specifically, "[c]ourts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Caddick v. Pers. Co. I LLC*, No. 16-CV-7326 (ALC), 2018 WL 3222520, at *8 (S.D.N.Y. June 29, 2018) (internal quotations and citations omitted).  Here, Plaintiff's last incident with Townsend was in May of 2014[5], while her expedited resolution meeting was not until September of 2014, where the three alleged adverse union decisions were made.  The Court cannot make the required inference at this stage of the litigation without specific allegations of harassment closely followed by the adverse union action.

Therefore, Plaintiff has failed to make a *prima facie* showing of Title VII retaliation, and CSEA's motion for summary judgment as to this claim is granted.

## IV.    Plaintiff's NYSHRL Claim

---

[5] While Plaintiff disputed this fact in CSEA's 56.1 statement, the testimony she proffers does not support her argument.  Plaintiff testified that while there were additional explicit phone calls, the May 2014 incident with Townsend was the last one.  (Perrin Decl. Ex. C at 116:12-18; 120:10-12; 128:19-22.)

Plaintiff also brings claims under the NYSHRL against CSEA.  CSEA contends that "[t]he analysis of claims, and standards for liability, under NYSHRL are identical to that under Title VII" which Plaintiff does not dispute.  (CSEA Mem. at 20.)  As discussed above, the Second Circuit has held that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."  *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997).  As a result, the Court's analysis regarding Plaintiff's federal claims applies with equal force to her NYSHRL claims.  Because Plaintiff's Title VII claims were deficient, awarding CSEA summary judgment for Plaintiff's NYSHRL claims is plainly warranted.

## CONCLUSION

For the foregoing reasons, Defendant CSEA's motion for summary judgment is GRANTED.  The Court respectfully directs the Clerk of Court to terminate the motion at ECF No. 94 and to terminate Local 412 of the CSEA, Inc. Local 1000, AFSCME, AFL-CIO from this action. The remaining parties are directed to appear for a telephonic pre-trial conference on April 22, 2022 at 2 PM.  To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

Dated: March 9, 2022                                                  SO ORDERED:
White Plains, New York

                                                                  _____
                                                                      NELSON S. ROMÁN
                                                                  United States District Judge